IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK08-82938 |
| | ) | |
| KEVIN D. HEBNER and AMANDA J. HEBNER, | ) | CHAPTER 7 |
| | ) | |
| Debtor(s). | ) | |

## ORDER

This matter is before the court on the debtors' motion for summary judgment (Fil. No. 312) and resistance by Wells Fargo Bank, N.A. (Fil. No. 320). Douglas E. Quinn represents the debtors, and Jonathon B. Burford and Ryan Forrest represent Wells Fargo Bank, N.A. ("Wells Fargo"). Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted.

The debtors received a Chapter 7 discharge of their debts in August 2011. Throughout the course of the bankruptcy case and thereafter, Wells Fargo communicated with the debtors concerning the bank's interest in the debtors' real property. In September 2014, the court granted the debtors' motion for contempt for what was characterized as the bank's continuing collection efforts despite being aware of the bankruptcy discharge, and setting the matter of the amount of damages, if any, to be awarded to the debtors for further hearing. The debtors have now filed a motion for summary judgment on that issue, which Wells Fargo resists.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078–79 (8th Cir. 2008). *See also Celotex Corp.*, 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

The following facts are uncontroverted for purposes of this motion:

1. The true and correct names of the debtors are Kevin D. Hebner and Amanda J. Hebner.

2. The debtors' current address is 20945 Timberland Drive, Elkhorn, Nebraska 68022, Douglas County, Nebraska.

3. The debtors commenced a Chapter 11 bankruptcy proceeding on November 13, 2008, docketed with the United States Bankruptcy Court for the District of Nebraska as Case No. 08-82938-TLS.

4. Prior to the filing of the bankruptcy case herein, the debtors' principal residence was real property located at 3809 South H.W.S. Cleveland Boulevard, Omaha, Nebraska 68130, which is the property at issue in this proceeding.

5. Prior to the filing of the bankruptcy case, the debtors executed a notification on or about May 14, 2008, authorizing their attorney, Douglas E. Quinn, to have full authority to deal with Wells Fargo with regard to the property in question.

6. Thereafter, the debtors received a notice of default from the law firm of Kozeny & McCubbin, L.C.

7. After the filing of the bankruptcy herein, Mr. Quinn sent a letter to Wells Fargo on September 3, 2009, stating that the debtors no longer had any interest in the property and directing Wells Fargo to Jeff Silver, counsel for Charter West National Bank ("Charter West"), which had previously conducted a foreclosure of the property in question.

8. The debtors received a notice from Wells Fargo of temporary insurance on September 21, 2009.

9. Mr. Quinn sent a letter to Wells Fargo on September 29, 2009, reiterating that the debtors had no further interest in the property.

10. The letter of September 29, 2009 was acknowledged by a letter to Mr. Quinn from Wells Fargo on October 7, 2009.

11. Mr. Quinn sent a letter to Wells Fargo on December 15, 2009, again reiterating the debtors did not intend to retain any interest in the property and advising Wells Fargo that it could file a motion for relief from the stay.

12. Wells Fargo filed a motion for relief from the automatic stay on October 1, 2010.

13. On October 4, 2010 an e-mail was sent to Mr. Quinn by a representative of Wells Fargo's counsel, Kozeny & McCubbin, L.C., regarding the filing of the stay relief motion.

14. An order was entered granting relief from the automatic stay in favor of Wells Fargo on January 3, 2011.

15. On October 25, 2010, Mr. Quinn filed a motion to convert the Chapter 11 case to a Chapter 7.

16. The motion to convert was granted on February 10, 2011.

17. The debtors received a court order granting them their discharge on August 26, 2011.

18. Subsequent to the entry of the order of discharge, the debtors began receiving notices and demands from Wells Fargo.

19. On May 29, 2014, the debtors filed a motion for contempt, for the continuing collection efforts.

20. On June 19, 2014, the debtors received yet another notice/demand from Wells Fargo, concerning an alleged escrow account related to the loan in question.

21. At no time did the debtors have an escrow established with regard to the property in question.

22. In addition to contacts from Wells Fargo, Wells Fargo has also listed the debt allegedly associated with the debtor's former residence on credit reports.

23. The debtors allege they have suffered emotional distress as a result of these ongoing demands for payment, due to the trauma of loss of Kevin D. Hebner's business and the necessity for the debtors to file for relief under the Bankruptcy Code, and the stress of dealing with Wells Fargo's collection attempts for months, even after the property had been sold.

24. The first affidavit of Kevin D. Hebner was filed herein as Filing No. 295 on August 20, 2014.

25. Since that time, the debtors received two more notices relating to Wells Fargo.

26. After a hearing on September 8, 2014, this court entered an order granting the debtors' motion for contempt.

27. Since the entry of the order finding Wells Fargo in contempt, the debtors and each of them have requested and obtained copies of their credit reports, which contain an entry appearing to show the mortgage debt to Wells Fargo as an open account in collection through foreclosure.

28. This entry on the debtors' credit report is misleading to potential creditors.

29. The debtors have incurred attorney fees solely relating to the pursuit of the investigation and pursuit for their remedies related to this motion for sanctions in the amount of $23,364.35 through November 30, 2014, with additional charges accruing for the preparation and prosecution of this motion for summary judgment.

In resistance to the motion for summary judgment, Wells Fargo asserts that the claimed amount of attorneys' fees seems excessive and is not supported by detailed documentation, and that there is no basis for the debtors' claim of up to $50,000.00 in punitive damages. Wells Fargo also argues that its ability to mitigate the damages was hindered because the debtors and their counsel dealt directly with Wells Fargo instead of contacting Wells Fargo's counsel. Finally, Wells Fargo points out that nearly every one of the documents complained of by the debtors contains a printed disclaimer that it is not a collection attempt.

The purpose of § 524(a)(2) of the Bankruptcy Code is to continue, after discharge, the stay imposed by § 362 when a case is filed. "It replaces the automatic stay with a permanent injunction against enforcement of all discharged debts upon entry of the discharge." *Waswick v. Stutsman County Bank (In re Waswick)*, 212 B.R. 350, 352 (Bankr. D.N.D. 1997). A willful violation of the discharge injunction warrants a finding of civil contempt and the imposition of sanctions. *Id.* The movant bears the burden of showing by clear and convincing evidence that the creditor had knowledge of the discharge and willfully violated it by pursuing collection activities. *In re Lang*, 398 B.R. 1, 3 (Bankr. N.D. Iowa 2008) (citing *In re Goodfellow*, 298 B.R. 358, 362 (Bankr. N.D. Iowa 2003)).

As stated on the record at the hearing granting the motion for contempt, Wells Fargo has been aware since September 2009 that the debtors were not claiming any interest in the property. Wells Fargo filed a motion for relief from stay, to which the debtors acquiesced, in October 2010, and the motion was granted in early 2011. An order discharging the debtors was entered on August 26, 2011. Yet Wells Fargo continued to send the debtors insurance renewal notices and account statements showing the loan balance to be delinquent and in foreclosure, with late fees and other charges continuing to accrue. These communications apparently continued until August 22, 2014, when Wells Fargo notified the debtors that, pursuant to instructions from the debtors, "we have taken the necessary steps to cease all telephone calls and written notices." Letter from Marie E. Laubenthal, Ex. 15 to Affid. of Kevin Hebner (Fil. No. 303). However, " we may notify you in the event that we are invoking remedies to collect your debt, which include but are not limited to the acceleration of the debt." *Id.* Even Wells Fargo's acknowledgment of the debtors' request to stop bothering them about a debt they no longer owe on property they no longer own contains a mixed message. Three years after entry of the bankruptcy discharge is more than sufficient time for Wells Fargo and its

agents to stop the computer-generated correspondence and put an end to the contact with the debtors that seems intended, openly or implicitly, to collect the balance owed to it. Clearly, Wells Fargo knew of the bankruptcy discharge, yet continued to pursue collection activities against the Hebners. This is a willful violation of the discharge injunction.

I am not persuaded by Wells Fargo's arguments that the debtors should have communicated with Wells Fargo's counsel instead of with Wells Fargo directly. After the discharge was entered and the case was closed, the debtors were under no obligation to go through Wells Fargo's counsel. The "damage mitigation" to which Wells Fargo refers may have occurred had Wells Fargo personnel been better educated about the effect of a discharge injunction before blithely continuing to contact debtors about a debt that had been discharged in bankruptcy.

To the extent Wells Fargo argues that the disclaimers printed on correspondence with the debtors protects them from sanctions, it is clear that a legal disclaimer is not carte blanche to otherwise violate statutory prohibitions. "A creditor cannot avoid the consequences of violating the automatic stay or discharge injunction simply by burying an alternative explanation for a clear demand for payment in fine print." *In re Zine*, ___ B.R. ___, 2014 WL 5426628, at *7 (Bankr. D. Mass. Oct. 22, 2014). The court further explained:

> Put simply, fine print that provides that a creditor, who is clearly seeking to collect a debt, should not be viewed as seeking to collect a debt in the event that the creditor is prohibited from doing so is deserving of no weight. *See In re Curtis*, 322 B.R. 470, 485 n.19 [(Bankr. D. Mass. 2005)] ("The Court acknowledges, but discounts, the unhighlighted language in the April 15, 2002 letter, which suggests that, in the event of discharge in a Chapter 7 case, no personal liability is asserted. This reservation is of little moment. The lender was continuing to insist that the Debtor make payments on the discharged second mortgage.").

*Id*. at n.64.

For damages, the debtors request an award of their attorneys' fees incurred in connection with this matter, along with actual damages for the detriment of their credit and punitive damages of no less than $50,000.00, as well as an order directing Wells Fargo to correct all credit reports and cease all activity in violation of 11 U.S.C. § 524.

Punitive damages generally are awarded to punish and deter particularly egregious conduct. *McLean v. Greenpoint Credit LLC*, 515 B.R. 841, 851 (M.D. Ala. 2014) (quoting *Keen v. Premium Asset Recovery Corp. (In re Keen)*, 301 B.R. 749, 755 (Bankr. S.D. Fla. 2008)); *see also Kerr v. First Commodity Corp. of Boston*, 735 F.2d 281, 289 (8th Cir. 1984) (stating that punitive damages "serve to punish the defendant and to deter both the defendant and others from engaging in similar conduct in the future. The degree of malice and the financial wealth of the defendant both are relevant in determining the proper amount of punitive damages."). The following five factors guide the court's

discretion in awarding punitive damages for violations of the automatic stay as well as for violations of the discharge injunction:

1. the nature of the defendant's conduct;
2. the nature and extent of the harm to plaintiff;
3. the defendant's ability to pay;
4. the motives of the defendant; and
5. any provocation by the debtor.

*McLean*, 515 B.R. at 851 (citing *Keen* 301 B.R. at 755).

In the *McLean* case, the creditor filed a claim on an $11,000.00 unsecured debt that had been discharged in a prior bankruptcy proceeding. The claim, along with notice that the debtors' monthly Chapter 13 plan payments would nearly double as a result, exacerbated the debtor-husband's military-service-related post-traumatic stress disorder and caused additional stress to the debtor-wife in worrying about her husband's mental state. The court heard testimony from the creditor that, while it was aware of the previous discharge and had noted said discharge in the debtors' file, subsequent computer software changes rendered the file notations unreadable. The court found the creditor's action to be a willful violation of the discharge injunction and awarded damages for emotional distress as well as $50,000.00 in punitive damages. The damage awards were upheld on appeal, with the district court finding that although the creditor did not intend to violate the discharge injunction, its conduct rose to the level of reckless disregard because it did not take steps to fix the computer software problem even after learning that it was attempting to collect discharged debts. The creditor's conduct interfered with the debtors' fresh start, and the court determined that a $50,000.00 punitive sanction was appropriate to redress the harm caused. The amount was not found to be excessive, as it was simply double the amount of actual damages.

In the present case, Wells Fargo's deliberate and repeated actions likewise interfered with the Hebners' ability to make a fresh start free from the burdens of personal liability for unsecured pre-petition debts, and damages, both actual and punitive, are certainly warranted. As far as punitive damages are concerned, the debtors have suggested $50,000.00. I believe that number is somewhat excessive under these circumstances. I do not believe Wells Fargo had any actual intent to harm the debtors with its actions; instead, I believe the harm was the result of incompetence or reckless disregard for the facts. I believe a sanction of $10,000.00 in punitive damages against Wells Fargo is sufficient to help ensure it fully understands the sanctity of a discharge injunction and how seriously this court takes violations of that injunction, especially by sophisticated institutional creditors who should know better. Wells Fargo is also ordered to take all necessary steps to correct the information regarding this debt on the debtors' credit reports and is directed to take the necessary steps to prevent such violations from occurring in the future, to these or any other debtors.

As for actual damages, at a minimum, Wells Fargo should pay the legal fees the debtors have incurred and are incurring in trying to stop the discharge injunction violations and bring the matter to resolution. In addition to attorney fees, debtors are entitled to actual damages for dealing with this

matter. The debtors' affidavits reference the time spent in contacting Wells Fargo repeatedly to try to straighten things out, as well as the aggravation and stress caused by having to deal with these post-discharge issues at all. Such damages are difficult to quantify, particularly where the debtors already have the stress and aggravation associated with a lengthy bankruptcy case and losing a home and business. Debtors were not able to specify any clear financial impact, but the actions of Wells Fargo certainly compounded the stress and aggravation experienced by the debtors. For that, I award $2,500.00 in actual damages.

IT IS ORDERED: The debtors' motion for summary judgment (Fil. No. 312) is granted, and:

1. Wells Fargo is ordered to pay to the debtors punitive damages in the amount of $10,000.00 within 15 days of the filing of this Order; and

2. Wells Fargo is ordered to pay to the debtors their actual damages, exclusive of legal fees and expenses, in the amount of $2,500.00 within 15 days of the filing of this Order; and

3. Wells Fargo is ordered to pay to debtors' attorneys the full, actual amount of legal fees and expenses debtors have incurred with respect to this matter. Mr. Quinn shall provide a detailed statement of such fees and expenses to counsel for Wells Fargo within 10 days after the filing of this Order and Wells Fargo shall make payment within 15 days thereafter.

DATED: January 8, 2015.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Douglas E. Quinn
    Jonathon B. Burford
    Ryan Forrest
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.